GREAT LAKES RUBBER CORPORA-
TION, Appellant,

v.

HERBERT COOPER CO., Inc.

No. 13309.

United States Court of Appeals
Third Circuit.

Argued Dec. 9, 1960.

Decided Feb. 8, 1961.

William H. Pattison, Jr., Washington, D. C. (Virgil E. Woodcock, Woodcock, Phelan & Washburn, Philadelphia, Pa., George N. Robillard, Robillard & Pattison, Washington, D. C., on the brief), for plaintiff-appellant.

Morton Amster, New York City (Frank A. Sinon, Rhoads, Sinon & Reader, Harrisburg, Pa., Jesse Rothstein, Amster & Levy, New York City, on the brief), for defendant-appellee.

Before BIGGS, Chief Judge, and GOODRICH and FORMAN, Circuit Judges.

BIGGS, Chief Judge.

This is an appeal from an order of the court below dismissing a counterclaim of Great Lakes Rubber Corporation (Great Lakes), made against Herbert Cooper Co., Inc. (Cooper), on the ground that the court lacked jurisdiction of the subject matter of the counterclaim. Because the question presented on appeal is whether Great Lakes' counterclaim arises out of the transaction or occurrence that is the subject matter of a claim asserted by Cooper a detailed analysis of the pleadings is necessary.

On May 12, 1959, Great Lakes filed an amended complaint naming Cooper as defendant. Jurisdiction was allegedly based on diversity. The allegations fall roughly into three groups. First, it was alleged that Howard Cooper and Joseph Herbert had been employed by Great Lakes for periods of approximately four and two years, as foreman and supervisor, respectively and that they left Great Lakes' employ taking with them certain information relating to the flexible rubber tubing manufactured by Great Lakes, and lists disclosing Great Lakes' customers; that shortly thereafter they, with others, founded Cooper; that Cooper

competed for and obtained customers that were, until then, customers of Great Lakes; and, that Cooper's "offering to sell, and manufacturing and selling flexible tubing made and offered for sale with utilization of knowledge and information acquired [by Howard Cooper and Joseph Herbert] while these men were in a fiduciary relationship with plaintiff" constituted "acts of unfair competition and unfair business practices".

Second, it was alleged that Great Lakes manufactures flexible tubing covered by patents held by Fred T. and Robert E. Roberts; that Great Lakes is a licensee of the Roberts; that Cooper, after failing to obtain a similar license, submitted bids to the United States Army and Air Force, customers of Great Lakes, offering to manufacture and sell flexible rubber tubing of a type, the manufacture and sale of which would constitute Cooper an "infringer" of the Roberts' patents; that Cooper, as low bidder, was awarded several contracts by the Government; that Cooper was enabled to underbid Great Lakes because unlike Great Lakes it was not paying royalties as a licensee under the Roberts' patents; and, that by reason of Cooper's operation as an "unlicensed infringer" it "is and has been in an unfair competitive position" relative to Great Lakes.

Third, it was alleged that Cooper implied to customers of Great Lakes that the quality of the tubing manufactured by Great Lakes was inferior; that Cooper represented to the United States Air Force that no validly patented ideas, processes or inventions held by others would be utilized in fulfilling its contracts for flexible tubing, that their representations were false; and, that these acts have damaged and imminently threaten Great Lakes' business operations.

Great Lakes referred to various contracts with the United States Army and Air Force which it alleged it had failed to obtain but which Cooper did obtain, and further specified an Air Force contract on which it was then being underbid by Cooper and which it would not obtain

if Cooper's acts of "unfair competition" were not enjoined. Great Lakes asked for relief in the form of an injunction, an accounting for profits and an award of damages.

On June 23, 1959, Cooper filed an answer to the amended complaint and a counterclaim which asserted that Great Lakes, Fred T. and Robert E. Roberts, the R. E. Darling Company, which like Great Lakes is a licensee of the Roberts, and various unnamed companies and individuals "have been and still are * * conspiring together and attempting both individually and in concert to restrain and monopolize interstate commerce" in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2. The conspiracy was alleged to include, without limitation, the making of false representations to certain of Cooper's material suppliers that they were guilty of contributory infringement when the conspirators knew that the supplied items were staple articles of commerce and could not be the basis of such liability.

The counterclaim also alleged, and this is of prime importance in the instant case, "the bringing of a series of unjustified lawsuits by the conspirators in bad faith and without color of right with the sole object of harassing and preventing defendant [Cooper] from competing in the manufacture and sale of flexible hose and thus eliminating defendant as a competitor, including this action [i. e., the action brought by the filing of the amended complaint by Great Lakes] * * * to prevent defendant from seeking the patronage of its principal customer, the United States, [and] an action brought in another court against the United States Secretary of Defense by Fred T. and Robert E. Roberts to prevent the Secretary from buying defendant's hose, and a patent infringement suit brought against defendant in * * * [the court below] by Fred T. and Robert E. Roberts to prevent defendant from manufacturing flexible hose and a temporary restraining order obtained therein, both the action and the restraining order * * * being in violation of 28

U.S.C.A. § 1498 which forbids infringement actions and injunctive restraints against government contractors * *." The counterclaim asked treble damages, costs and attorneys' fees.

On July 2, 1959, Cooper moved to dismiss Great Lakes' amended complaint on the ground that there was no diversity of citizenship between the parties. By order dated December 9, 1959, the court granted Cooper's motion to dismiss. Jurisdiction of Cooper's counterclaim was retained on the ground that it had an independent basis of jurisdiction in that it asserted a claim arising under the laws of the United States. No appeal was taken from that order and no question regarding it has been raised on this appeal.

On December 28, 1959, Great Lakes filed an answer and a counterclaim to Cooper's counterclaim. Great Lakes' counterclaim repeated in substance the allegations of its amended complaint. The counterclaim is distinguishable from the amended complaint only in that it is more specific and in that it alleges further that Cooper, with knowledge of the amounts of royalties required to be paid by Great Lakes under the Roberts patents, has underbid Great Lakes on various contracts offered by agencies of the United States by approximately the amount of the royalties required to be paid by Great Lakes to the Roberts; that Herbert and Cooper had induced "key" employees of Great Lakes to leave it and to become employed by Cooper; and that Cooper's charges in the court below were baseless and untrue and have resulted in damaging Great Lakes unfairly.

On June 6, 1960, Cooper moved to dismiss the Great Lakes counterclaim on the ground that the court below lacked jurisdiction of the subject matter. In opposition to this motion Great Lakes contended that the court had ancillary jurisdiction of its counterclaim as a compulsory counterclaim arising out of the same transaction and occurrences that were the subject matter of Cooper's claim arising under the Federal antitrust laws. On May 5, 1960, the court granted Cooper's motion to dismiss on the ground that Great Lakes' counterclaim was not a compulsory counterclaim. This appeal followed.[1]

A federal court has ancillary jurisdiction of the subject matter of a counterclaim if it arises out of the transaction or occurrence that is the subject matter of an opposing party's claim of which the court has jurisdiction. Moore v. New York Cotton Exchange, 1926, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750; 3 Moore, Fed.Practice, pp. 39–41 (2d ed. 1948). Similarly, a counterclaim that arises out of the transaction or occurrence that is the subject matter of an opposing party's claim is a "compulsory counterclaim" within the meaning of Rule 13(a) of the Federal Rules of Civil Procedure. It is stated frequently that the determination of ancillary jurisdiction of a counterclaim in a federal court must turn on whether the counterclaim is compulsory within the meaning of Rule 13(a). Such a statement of the law relating to ancillary jurisdiction of counterclaims is not intended to suggest that Rule 13(a) extends the jurisdiction of the federal courts to entertain counterclaims for the Federal Rules of Civil Procedure cannot expand the jurisdiction of the United States courts. What is meant is that the issue of the existence of ancillary jurisdiction and the issue as to whether a counterclaim is compulsory are to be answered by the same test. It is not a coincidence that the same considerations that determine whether a counterclaim is compulsory decide also whether the court has ancillary jurisdiction to adjudicate it. The tests are the same because Rule 13(a) and the doctrine of ancillary jurisdiction are designed to

1. The court below did not direct the entry of final judgment upon the counterclaim as specified by Rule 54(b), Fed.Rules Civ.Proc., 28 U.S.C., i. e., upon an express determination that there is no just reason for delay. Since, however, the court's order was one "refusing" an injunction, this court has jurisdiction of the appeal pursuant to Section 1292(a) (1), 28 U.S.C.

abolish the same evil, viz., piecemeal litigation in the federal courts.

We have indicated that a counterclaim is compulsory if it bears a "logical relationship" to an opposing party's claim. Zion v. Sentry Safety Control Corp., 3 Cir., 1958, 258 F.2d 31. See also United Artists Corp. v. Masterpiece Productions, Inc., 2 Cir., 1955, 221 F.2d 213, 216. The phrase "logical relationship" is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

■ Cooper alleges that the claims originally asserted in Great Lakes' amended complaint,[2] reiterated in substance in its counterclaim, are "unjustified" and were brought in "bad faith and without color of right with the sole object of harassing and preventing defendant [Cooper] from competing in the manufacture and sale of flexible hose." These are the only allegations set out by Cooper's counterclaim which demonstrate a relationship within the purview of Rule

13(a) to Great Lakes' amended complaint or counterclaim. But that they do demonstrate a relationship is unquestionable. It is clear that a determination that Cooper's claims that the claims asserted in Great Lakes' amended complaint and reiterated in substance in its counterclaim are harassing will entail an extensive airing of the facts and the law relating to Great Lakes' counterclaim. It follows that the court below was in error in dismissing Great Lakes' counterclaim on the ground that it was permissive. We hold that Great Lakes' counterclaim was a compulsory one within the meaning of Rule 13(a).

We point out that we express no opinion as to whether any of the pleadings in the present case, whether those of Cooper or those of Great Lakes, state claims upon which relief can be granted. Only the question of jurisdiction is raised on this appeal. There can be no doubt that the court below possesses the power, the jurisdiction, to ascertain whether or not causes of action are stated by the respective parties. Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 359, 79 S.Ct. 468, 3 L.Ed.2d 368. The issues of whether or not the respective parties have stated causes of action and their nature will be before the court below and can be decided on remand after briefing and argument. If an appeal be taken from the ensuing decision this court will have the benefit of the views of the lower court.

The judgment will be reversed and the cause will be remanded with the direction to proceed in accordance with this opinion.

2. The amended complaint was dismissed by the court below as we have stated at an earlier point in this opinion but none the less it is one of the operative facts on which Cooper rests its allegations of harassment and is pertinent on that issue.