**CYCLOPS CORPORATION, Plaintiff,**

v.

**FISCHBACH AND MOORE, INC. and Allis Chalmers Manufacturing Company, Defendants.**

**Civ. A. No. 70–1370.**

United States District Court,
W. D. Pennsylvania.

July 16, 1976.

Joseph A. Katarancic and W. McCook Miller, Jr., Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiff.

Thomas J. Reinstadtler, Pittsburgh, Pa., for defendant Allis Chalmers.

Edmund S. Ruffin, III, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant Fischbach & Moore, Inc.

**618**

### OPINION

WEBER, District Judge.

This suit and related litigation elsewhere arose out of the purchase by Cyclops of a large industrial machine manufactured by Defendant Allis-Chalmers. The machine malfunctioned on two occasions requiring its return to Allis-Chalmers for repairs. The "first breakdown" and repair occurred during the period January 20, to January 29, 1969. The "second breakdown" and repair occurred during the period February 1 to February 20, 1969. Claims for damages arising out of this purchase, breakdown and repair were filed in various jurisdictions.

On September 2, 1970, at Civil Action No. 70-1053 in this court, Cyclops sued Home Insurance Company under its business interruption insurance for damages incurred during the "first breakdown" and we held that the coverage applied and that the insurance company was liable. (352 F.Supp. 931 [1973]).

In September 1970, Home Insurance Company and Cyclops sued Allis-Chalmers in the United States District Court for the Southern District of Ohio (Eastern Division) at No. 70-292 for damages arising out of the second breakdown. In March 1973 a verdict was rendered in favor of defendant Allis-Chalmers and the case was closed.

In February 1975, Allis-Chalmers filed a suit against Cyclops in the Court of Common Pleas of Richland County, Ohio, at No. 75-76 for the cost of repairs to the motor following the "second breakdown". This suit was terminated by summary judgment entered in favor of Cyclops on June 29, 1976 on the grounds that plaintiff was barred from recovery due to failure to assert its claim as a compulsory counterclaim pursuant to Fed.R.Civ.P. 13(a) in a previous action in the United States District Court for the Southern District of Ohio, No. 70-292.

The present action by Cyclops against Allis-Chalmers was filed in this court on December 2, 1970 and claimed consequential damages suffered by Cyclops as a result of the "first breakdown". Summary judgment in favor of defendant Allis-Chalmers

was rendered on all claims except for a shipping charge of $14,000 which remained for trial. See 389 F.Supp. 476, affd. by Order 523 F.2d 1050 [3rd Cir. 1975].

On May 13, 1976, while the action was awaiting trial on the liability for the shipping charge, Allis-Chalmers moved to amend its answer to assert a counterclaim for the repair bill which was the subject of the Ohio Common Pleas Court action. It should be noted that the instant motion to amend was filed before the decision of the Ohio Common Pleas Court. However, Allis-Chalmers alleges that the motion to amend was filed when the defense of compulsory counterclaim was first raised at a late stage of the Ohio Common Pleas proceedings.

Cyclops raises several grounds of objection to the proposed amendment: (1) The bar of the statute of limitations; (2) *res judicata;* (3) estoppel; (4) the full faith and credit due the Ohio Common Pleas Court judgment under 28 U.S.C. § 1738, and (5) prejudice arising from undue delay in presenting the amendment.

The Ohio Common Pleas judgment was filed June 29, 1976. We do not know if any appeal has been taken or if the time for appeal has expired. Nevertheless, it does involve the same parties and the court decided the identical issue as is raised by the motion to amend.

The fact that an appeal is pending or still may be filed is not material:

"The federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel unless the appeal removes the entire case to the appellate court.

\* \* \* \* \* \*

If the appellate court is limited to consideration of the trial record and to affirming, reversing, vacating or modifying the judgment under review, the judgment stands as res judicata of the cause of action adjudged, and is entitled to collateral estoppel effect, until reserved, vacated or modified. 1B Moore's Fed.Practice, 2nd ed. ¶ 0.416[3] [1974].

Thus, for our purposes the Ohio Common Pleas Court has determined that the claim before it was barred by reason of the judgment of the United States District Court of Ohio where the counterclaim was required to be pleaded but was not.

■ Regardless of the effect of finality of the Ohio Common Pleas judgment we must come to the same conclusion as to the res judicata effect of the judgment of the United States District Court for the Southern District of Ohio. We have before us the copies of the complaint and answer in the action filed in the Southern District of Ohio, and the proposed amended complaint and the response to the motion for leave to amend in the present action in this court.

These pleadings establish that the Ohio federal court action by plaintiffs Home Insurance Company (as subrogee) and Cyclops was for the costs and damages incurred by Cyclops between February 1, 1969 and February 20, 1969, when the machine was down for repairs (herein called the "second breakdown") and the subject matter of the instant counterclaim is for repairs to the machine from February 1, 1969 to February 20, 1969. While the present litigation in this court also arises out of the relationship between the parties and the same machine, it has been clearly identified with the consequential damages arising out of the "first breakdown" from January 20, to January 29, 1969. While the counterclaim might arguably be said to arise out of the same claim asserted in the present suit, it undoubtedly has a closer relation to the Southern District of Ohio claim.

Fed.R.Civ.P. 13(a) provides in part:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

■ The policy of Rule 13 is to flush out all possible counterclaims early in the litiga-

tion; in other words "to prevent multiplicity of actions and to achieve a just resolution in a single lawsuit of all disputes arising out of common matters," 3 Moore's Federal Practice ¶ 13.12[1] [1974].

With respect to the definition of "same transaction or occurrence", the leading case is *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 [1926]. This case involved the power of the court to grant equitable relief on a counterclaim when the plaintiff's claim had been dismissed for insufficient proof of jurisdictional facts. The Court determined that a substantial claim under a federal statute had been made which conferred jurisdiction and therefore a compulsory counterclaim had to be pleaded under Equity Rule 30 and was within the jurisdiction of the Court. While this case was decided under Equity Rule 30, before the adoption of Fed.R.Civ.P. 13, the phrase "arising out of the same transaction" appears in both rules. The Court defined it as follows:

'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. The refusal to furnish the quotations is one of the links in the chain which constitutes the transaction upon which appellant (plaintiff) here bases its cause of action. It is an important part of the transaction constituting the subject-matter of the counterclaim. It is the one circumstance without which neither party would have found it necessary to seek relief. Essential facts alleged by appellant (plaintiff) enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations, as, for example, that appellant (plaintiff) is unlawfully getting the quotations, does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constitut-

ing the defendant's counterclaim. Id. at 610, 46 S.Ct. at 371.

In *Berger v. Reynolds Metals Company,* 39 F.R.D. 313 [E.D.Pa.1966], the plaintiff alleged acts of mismanagement and diversion of assets. In their counterclaim the defendants alleged that the contract was induced by fraudulent misrepresentations. On the basis of these facts, the court held that the necessary "logical relationship" existed:

> It is clear to this court that a logical relationship does exist between the claim and the counterclaim. Both involve allegations relating to the obligations and abilities of New Eastwick to carry forth a specific urban development project, and the plaintiff goes so far as to admit in his brief that 'It would, of course, be less than candid not to say that both the claim and counterclaim are rooted in the economic failure of New Eastwick.' Therefore, we deem the counterclaim compulsory. See *Great Lakes Rubber Corp. v. Herbert Cooper,* 286 F.2d 631 [3d Cir. 1961]; *United Artists Corp. v. Masterpiece Productions, Inc.,* 221 F.2d 213 [2d Cir. 1955]; *Arvey Corp. v. Peterson,* 178 F.Supp. 132 [E.D.Pa.1959]; *E. J. Korvette Co. v. Parker Pen Co.,* 17 F.R.D. 267 [S.D.N.Y.1955]. See Wright, Estoppel by Rule: The Compulsory Counterclaim under Modern Pleading, 38 Minn.L.Rev. 423 [1954]; 3 Moore, Federal Practice § 13.13; 1A Barron & Holtzoff, Federal Practice & Procedure § 394. 39 F.R.D. at p. 316.

*Weber v. Weber,* 44 F.R.D. 227 [E.D.Pa. 1968], involved an automobile accident action in which a third party was joined. The third party defendant filed a counterclaim against the defendant, as third party plaintiff, for his own personal injuries. In finding the counterclaim compulsory, Judge John Morgan Davis relied upon the test of "same transaction or occurrence" enunciated in *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631 [3rd Cir. 1961];

> We have indicated that a counterclaim is compulsory if it bears a "logical relationship" to an opposing party's claim * *

> A counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts.

> Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. 286 F.2d at 634.

Judge Davis then applied the *Great Lakes Rubber* test to the facts of *Weber,* supra, when

> Applying this test to the case at hand, we are obliged to conclude that the counterclaim of the third party defendant Gerald Schley, although 'independent', i. e. for his own damages, does indeed involve 'many of the same factual issues' as will be presented in the third party action for contribution. A characterization that they are 'offshoots of the same basic controversy between the parties' would be quite accurate. Needless to say, the prosecution of the entire matter in one lawsuit would certainly champion the cause of 'fairness'. Finally, the consideration of convenience and economy which Judge Biggs has deemed as significant, would be enhanced by the single action. 44 F.R.D. at 230.

■ The failure to assert a compulsory counterclaim precludes its later assertion in another, subsequent lawsuit. In so holding, the federal courts have reasoned that (1) the sheer force of Rule 13(a) prevents later suits, or (2) that the principle of *res judicata,* apart from the policy of Rule 13(a), precludes the litigation of claims that either were actually litigated or could have been litigated between the same parties in a prior lawsuit.

The policy underlying Rule 13(a) demands that the failure to assert a compulsory counterclaim precludes its later assertion.

*Southern Construction Co., Inc. v. Pickard,* 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 [1972]:

The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim "shall" be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which the counterclaim became the basis of the complaint. See, *e. g., United States v. Eastport S. S. Corp.,* 255 F.2d 795, 801–802, 371 U.S. at 60, 83 S.Ct. at 110.

In *New Britain Machine Co. v. Yeo,* 358 F.2d 397 [6th Cir. 1966], where an action had been brought in 1960, and in 1962 defendant indicated that no counterclaim would be filed, a motion to amend the answer to assert a counterclaim in 1964, after completion of a prolonged trial and a decision on the merits adverse to defendant was denied. The court found the proposed pleading to be a compulsory counterclaim to the 1960 complaint and defendant's failure to assert it as such barred the proposed amendment.

This rule is mandatory. It requires that such a counterclaim be pleaded and adjudicated or else all right of action thereon is foreclosed. [1A Barron & Holtzoff, Fed.Prac. & Proc. § 394 at p. 565 (Wright ed.)].

Having failed to file a timely counterclaim in case No. 16,287 until after the district judge had announced his decision on the merits, New Britain is now foreclosed from asserting the same claim in the form of a separate action. Under the circumstances, we hold that the district court did not err in dismissing the complaint in case No. 16,211. 358 F.2d at p. 410.

In *Reconstruction Finance Corp. v. First National Bank of Cody,* 17 F.R.D. 397 [D.Wyo.1955], it was held that the failure of R.F.C. to interpose a counterclaim for fraud in a prior lawsuit instituted by one of the present co-defendants against R.F.C. barred R.F.C.'s present action as to that defendant.

There is no doubt that if, indeed, the claim were compulsory within the contemplation of Rule 13(a), it cannot now be maintained as to any party against whom Reconstruction Finance Corporation was bound to interpose it in the prior action. 17 F.R.D. at p. 402.

In *Mesker Bros. Iron Co. v. Donato Corporation,* 401 F.2d 275 [4th Cir. 1968], the court stated:

Rule 13, Fed.R.Civ.P., section (a) . . governs compulsory counterclaim practice in federal litigation. Although the rule does not explicitly so state, the effect of a defendant's failure to assert a counterclaim. made compulsory by section (a) is to preclude its assertion in a later action against the former plaintiff. 401 F.2d at pp. 278–9.

In each of the above cases, the court relied upon the federal policy of Rule 13(a), to flush out all possible counterclaims in the first litigation, to deny a party the right to prosecute a claim that should have been pleaded as a counterclaim in some previous lawsuit. Courts at all levels are not always clear as to whether they are denying a party's claim on the basis of the policy of Rule 13 or *res judicata.*

*Res judicata* demands that all issues that should have been litigated between the parties of a prior litigation, but were not litigated, cannot be raised in subsequent litigation. Therefore, since a compulsory counterclaim is an issue that should have been raised, *res judicata* demands that counterclaims not pleaded cannot be the subject of separate, subsequent suits.

While neither Equity Rule 30 nor the present Rule (13) provides that failure to assert a compulsory counterclaim will be deemed to preclude its later assertion, such a result was reached under Rule 13 in accordance with similar reasoning, *i. e.,* that the principle of *res judicata* applies to all issues that should have been raised, even though actually omitted. 3 Moore's Fed.Prac. ¶ 13.12[1] [1974].

In *Great Lakes Rubber Corp. v. Herbert Cooper, Inc.,* 286 F.2d 631 [3rd Cir. 1961], where the district court dismissed a counterclaim for want of jurisdiction, the court of appeals reversed stating that Cooper's counterclaim was compulsory and, therefore, within ancillary jurisdiction:

> The tests are the same because Rule 13(a) and the doctrine of ancillary jurisdiction are designed to abolish the same evil, viz., piecemeal litigation in the federal courts.

> \*    \*    \*    \*    \*    \*

> . . . Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.   286 F.2d at pp. 633–34.

■ An Ohio state court has already determined that Allis Chalmers' claim for repair costs arising out of the second breakdown was a compulsory counterclaim that should have been pleaded in the action instituted by Cyclops in the federal court in Ohio. Disregarding for a moment our independent finding that the repair costs constitute a compulsory counterclaim of the federal action in Ohio, the litigation and determination of this issue ˙by the Ohio state court impels us to apply the doctrines of *res judicata* and full faith and credit and reject Allis Chalmers' proffered amendment.

■ *Res judicata,* "a salutary doctrine of repose", gives conclusive finality to valid, final judgments on the merits and precludes further litigation of the same claims between the same parties. 1B Moore's Federal Practice, ¶ 0.401 at 11–12 [1974]. *Connelly v. School District of Haverford Township,* 461 F.2d 495 [3rd Cir. 1972], illustrates the application of *res judicata.* A landown-er came to federal court to enjoin condemnation of his land by the state after his claims had been considered, adjudicated, and denied by the Delaware County courts and the Pennsylvania Supreme Court, with a denial of certiorari by the United States Supreme Court. The court of appeals affirmed the finding of the district court, 326 F.Supp. 241 [E.D.Pa.1972], that the allegations of Connelly's complaint had been "fully and fairly litigated" in the state courts and that the doctrine of *res judicata* had prevented the landowner from relitigating his claims in federal court. The district court states:

> The doctrine of res judicata is conclusive not only as to questions actually raised and considered, but to questions that could have been raised and considered in the prior (state) proceedings. 326 F.Supp. at p. 244.

See also, *Hilliard v. Commonwealth of Pennsylvania,* 308 F.Supp. 756 [W.D.Pa. 1970].

■ A state proceeding, however, does not merit *res judicata* effect if the state proceeding was not of an adversary nature. *Williams v. Murdoch,* 330 F.2d 745 [3rd Cir. 1964].

In the Ohio state proceeding, the same parties before us now litigated the same issue. The decision of the Ohio state court, that Allis Chalmers' claims for repair costs arising from the second breakdown were a compulsory counterclaim to the Ohio federal action, deserves *res judicata* effect.

■ The concept of full faith and credit carries the Ohio state judgment across state lines and into federal court for, under the Constitution[1] and 28 U.S.C.A. § 1738,[2] a

1. The U.S. Constitution, art. 4, § 1, provides:
Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

2. 28 U.S.C.A. § 1738 provides in part:
The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or ad-mitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

valid judgment of one state must be given full faith and credit in the courts of another state and in the federal courts. If a party wins a final, valid judgment on the merits in a state court, and the losing party initiates another suit in federal court on the same claim against the same party,

> the doctrine of res judicata is implemented by the congressional mandate that the federal court give full faith and credit. 1B Moore, Federal Practice, ¶ 0.401 at p. 14 [1974].
> Thus the doctrine of full faith and credit supports and gives effect to the doctrine of *res judicata,* and accordingly 'the local doctrines of res judicata, speaking generally, become a part of the national jurisprudence,' *Riley v. New York Trust Co.,* 315 U.S. 343, 349, 62 S.Ct. 608, 86 L.Ed. 885 [1942]. *Id.* at ¶ 0.406 at p. 902.

In *Cunningham v. A. J. Aberman, Inc.,* 252 F.Supp. 602 [W.D.Pa.1965], *aff'd.* p.c. 358 F.2d 747 [3rd Cir. 1966]. Cunningham sought a declaratory judgment that a judgment entered by the Court of Common Pleas of Allegheny County and affirmed by the Pennsylvania Supreme Court, and mortgage foreclosure proceedings pursuant thereto, was a nullity. The district court held that, because the state supreme court affirmed on the basis that the lower state court's finding of default on the mortgage was substantiated, the matter was *res judicata* and the judgment of the state courts was entitled to full faith and credit in federal court.

After a full adversary proceeding, the Ohio state court found that the repair costs stemming from the second breakdown were a compulsory counterclaim in the Ohio federal action. In the face of this ruling, Allis Chalmers seeks leave to amend its answer and thus bring the same parties and same claims of the Ohio state action into this court. Under the Constitution and 28 U.S.C.A. § 1738, the Ohio judgment and its *res judicata* effect merit "full faith and credit" in this court. Even if we believed that the Ohio state court decided the counterclaim issue wrongly, which we clearly do not, we would still be bound by their decision, *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 [1940].

Both parties have argued that the allowance of the amendment is discretionary with the court under Fed.R.Civ.P. 15 and have advanced the lateness of the proffered amendment and the prejudice or lack of prejudice to the parties for its allowance or denial. We do not treat this argument because of the conclusions reached in the foregoing Opinion that the matter is not discretionary with the court but that denial of the amendment is mandated by the requirements of Fed.R.Civ.P. 13, the doctrine of res judicata, and the constitutional requirement of full faith and credit.

The motion for leave to amend will be denied.