OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Rettig Enterprises, Inc. et al., Appellees, v. Koehler et al.,
Appellants.
[Cite as Rettig Enterprises, Inc. v. Koehler (1994),     Ohio
St.3d     .]
Civil procedure -- Civ.R. 13 -- Counterclaim and cross-claim --
     All existing claims between opposing parties that arise
     out of same transaction must be litigated in a single
     lawsuit -- "Logical relation" test can be used to
     determine whether claims between opposing parties arise
     out of the same transaction.
1. All existing claims between opposing parties that arise out
     of the same transaction or occurrence must be litigated in
     a single lawsuit pursuant to Civ. R 13(A), no matter which
     party intitiates the action.
2. The "logical relation" test, which provides that a compulsory
     counterclaim is one which is logically related to the
     opposing party's claim where separate trials on each of
     their respective claims would involve a substantial
     duplication of effort and time by the parties and the
     courts, can be used to determine whether claims between
     opposing parties arise out of the same transaction or
     occurrence.
     (No. 92-2121 -- Submitted November 10, 1993 -- Decided
February 9, 1994.)
     Appeal from the Court of Appeals for Hancock County, No.
5-91-19.
     This appeal involves issues relating to three lawsuits
arising out of business disputes between the parties.  The
facts will be set forth as they are relevant to each lawsuit.
                         "Rettig I"
     On August 1, 1988, plaintiff, Rettig Enterprises, Inc.,
d.b.a. Ohio Tool & Surplus, filed a "Complaint for Rescission
and Money" in the Hancock County Court of Common Pleas against
defendants, Dennis E. Lane, James C. Koehler, Northwest Passage
Trading Co., Inc. and Northwest Ohio Tool (case No. 88-431-MJ,
later redesignated No. 88-431-OC, and hereafter referred to as
"Rettig I").  The complaint alleged that the defendants orally
agreed to purchase Ohio Tool & Surplus ("Ohio Tool"), a retail

store located at 820 North Main Street in Findlay, Ohio that deals in the sale and trading of tools and surplus goods. According to the complaint, the defendants took possession of Ohio Tool's inventory on February 1, 1988 and thereafter failed to account for such inventory as agreed. The complaint sought a constructive trust on all inventory, rescission of the oral agreement, return of the inventory to plaintiff, and damages in an amount equal to the value of any inventory that "dissipated" while in defendants' possession. The complaint also alleged a balance due on the unpaid purchase price of Ohio Tool.

On October 17, 1988, the parties entered into an agreement which purported to settle Rettig I and the underlying disputes surrounding the sale of Ohio Tool. The settlement agreement refers to the underlying business arrangement as a "lease," the real property of which defendants "improved." The agreement provides that defendant shall pay a specified sum of money to the plaintiff for the estimated cost of the inventory that defendants sold, the payment balance due and net accounts receivable, less money already paid. The agreement further provides, however, that the estimated cost of the inventory that defendants sold is subject to change depending on the results of an arranged calculation. Under this arrangement, the defendants would remain at 820 North Main Street until December 31, 1988, at which time they would vacate the premises and all improvements would accrue to plaintiff's benefit. Meanwhile, the plaintiff must remove its inventory and defendants must give plaintiff access to all their inventory sales slips from February 1, 1988 until the day that plaintiff removes its inventory. At that time, Kevin Rettig on plaintiff's behalf and Will Shinew on defendants' behalf were to calculate the cost value of all inventory sold based on those sales slips. The agreement also provides that Rettig I would be dismissed with prejudice.

Rettig I was eventually dismissed on March 20, 1990, during the pendency of "Rettig II."

                    "Rettig II"

On January 6, 1989, plaintiffs, Rettig Enterprises, Inc., Edward M. Rettig and Kevin Rettig, filed a "Complaint for Money Only" against the same defendants named in Rettig I (case No. 89-7-MJ, redesignated 89-7-OC, and herein referred to as "Rettig II"). The complaint alleged "that defendants have willfully and maliciously failed to pay***the sums agreed under the [settlement agreement]," particularly with regard to inventory allegedly sold by defendants from February 1, 1988 through November 12, 1988.

On June 1, 1989, defendants filed a counterclaim which alleged that plaintiffs owed defendants money for certain items purchased while the business at 820 North Main Street was being operated by defendants and/or in the process of being returned to plaintiffs. The items include: (1) tools and equipment purchased on credit between February 1, 1988 and October 25, 1988; (2) certain Curtis bolts and screws purchased on November 19, 1988; and (3) three rows of shelving purchased on November 19, 1988.

On October 10, 1989, the case proceeded to trial to the court. Following the testimony of Kevin Rettig in plaintiffs' case-in-chief, the trial court found that the parties had

failed to calculate the cost value of the inventory as required by the terms of the October 17, 1988 settlement agreement and that without such calculation the court could not make a determination.  The court continued the case for thirty days and ordered Kevin Rettig and Will Shinew to complete the calculation (which order was entered on October 31, 1989).

On October 24, 1989, the plaintiffs filed a motion to dismiss the case pursuant to Civ. R 41(A) and, on November 30, 1989, the defendants opposed the motion to dismiss.  On January 10, 1990, the trial court entered judgment dismissing the complaint without prejudice on its own motion for failure to comply with the October 31, 1989 judgment entry.  The judgment provided, however, "that the foregoing dismissal does not constitute a dismissal of the defendants' counterclaims."

The counterclaims were tried to the court on February 22, 1990.  On April 17, 1990, plaintiffs filed a motion to file a supplemental complaint pursuant to Civ. R. 15(E) which sought, in part, to add Shinew as a party defendant.  On May 10, 1990, the trial court entered judgment denying plaintiffs' motion on the basis that since plaintiffs' claims had been dismissed, there is "no pleading to be supplemented."  The court went on to state that "[t]his ruling in no way precludes the plaintiffs' [sic] from instituting an appropriate action to complete the terms of [the] settlement agreement***[or from litigating] any other controversies between the parties."  On May 29, 1990, judgment was entered in favor of defendants on their counterclaims.

### "Rettig III"

On May 14, 1990, the plaintiffs commenced the present action by filing another complaint against the same defendants and also naming Shinew as a defendant (case No. 90-122-OC, hereafter referred to as "Rettig III").  Count I of the complaint sought an order commanding Shinew to perform the inventory cost calculations as provided in the settlement agreement.  Count II alleged that "[f]rom 12/24/87 to 9/20/88 the Defendants incurred [in-store] open-ended account charges."  Count III alleged that "[f]rom 2/8/88 to 3/7/89 the Defendants charged on the telephone bill of the plaintiffs."  Count IV alleged that "defendants have willfully and maliciously failed to pay***under the [settlement agreement]."

On April 15, 1991, the trial court granted defendants' motion for summary judgment and dismissed plaintiffs' complaint.  In so doing, the trial court found that "[t]his instant case *** is predicated entirely on issues relating to the original compromise agreement," and held that "[a]ll claims and compulsory counterclaims should have been decided in the one action on the settlement agreement [i.e., Rettig II] otherwise they would be waived."  Additionally, the trial court also held "that the relief sought against Mr. Shinew should properly have been demanded in [Rettig II]."

The court of appeals reversed, finding "no connection between the counterclaims [in Rettig II] and the terms of the settlement agreement.  *** Thus, we conclude that the counterclaims were not compulsory and that it was error on the part of the trial court to conclude that the doctrine of res judicata applied."

The cause is now before this court pursuant to the

allowance of a motion to certify the record.

William Scott O'Brien, for appellees.

Brimley, Kostyo & Lather and John F. Kostyo, for appellants James C. Koehler, Dennis E. Lane, Northwest Passage Co., Inc., and Northwest Ohio Tool.

Bernard K. Bauer Co., L.P.A., and Bernard K. Bauer, for appellant Will Shinew.

Alice Robie Resnick, J.  Although somewhat factually complicated, this case presents a simple legal issue:  Does Civ. R. 13(A) bar the plaintiffs from bringing Rettig III?  We answer this question in the affirmative.

Civ. R 13(A) provides, in pertinent part, that:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

In Geauga Truck & Implement Co. v. Juskiewicz (1984), 9 Ohio St. 3d 12, 14, 9 OBR 61, 63, 457 N.E. 827, 829, this court stated that "[t]he two-pronged test for applying Civ. R. 13(A) is: (1) does the claim exist at the time of serving the pleading***; and (2) does the claim arise out of the transaction or occurrence that is the subject matter of the opposing claim."  If both prongs are met, then the present claim was a compulsory counterclaim in the earlier action and is barred by virtue of Civ. R. 13(A).  Id.

It makes no difference to the application of Civ. R. 13(A) that the opposing claim in the earlier action was a counterclaim rather than a complaint or that the present claim was originally filed as a complaint in the earlier action and dismissed without prejudice after the defendant filed its counterclaim.  See 5 Wright & Miller, Federal Practice and Procedure (Civil 2d 1990) 28-29, Section 1188.  See, also, Lenihan v. Shumaker (May 6, 1987), Summit App. No. 12814, unreported; Dungan v. Bryant (Mar. 2, 1983), Lorain App. No. 3393, unreported.1  Civ. R. 13(A) requires all existing claims between opposing parties that arise out of the same tranaction or occurrence to be litigated in a single lawsuit, regardless of which party initiates the lawsuit.

It is undisputed that the plaintiffs' claims in Rettig III existed at the time the relevant pleadings were served in Rettig II.  The only question that remains is whether the plaintiffs' claims in Rettig III arise out of the transaction or occurrence that is the subject matter of the defendants' counterclaims in Rettig II.

In determining whether claims arise out of the same transaction or occurrence, courts most frequently utilize the "logical relation" test.  See, generally, 6 Wright, Miller & Kane, Federal Practice and Procedure (Civil 2d 1990) 65, Section 1410.  Under this test, "[a] compulsory counterclaim is one which 'is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts.'"  Staff Notes (1970) to Civ. R. 13,

quoting Great Lakes Rubber Corp. v. Herbert Cooper Co. (C.A. 3, 1961), 286 F. 2d 631, 634.

The logical relation test comports with the object and purpose of Civ. R. 13(A), viz., to avoid a multiplicity of actions and to achieve a just resolution by requiring in one lawsuit the litigation of all claims arising from common matters. See Staff Notes, supra; Cyclops Corp. v. Fischbach & Moore, Inc. (D.C. Pa. 1976), 71 F.R.D. 616, 619; 6 Wright, Miller & Kane, Federal Practice and Procedure, supra, at 46, Section 1409. This test is also useful in the flexibility it affords:

"'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. *** That they are not precisely identical, or that the counterclaim embraces additional allegations *** does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim." Moore v. New York Cotton Exchange (1926), 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750, 757.

Thus, multiple claims are compulsory counterclaims where they "involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." Great Lakes Rubber Corp., supra, at 634.

A review of the record in this case reveals that the claims asserted by plaintiffs in Rettig III are logically related to and arose out of the same transactions as the counterclaims litigated in Rettig II. They are offshoots of the same basic controversy between the parties over an accounting of the various rights, obligations and liabilities springing from the business arrangement involving Ohio Tool at 820 North Main Street, and include many of the same factual and legal issues. In fact, the claims asserted by plaintiffs in Rettig III are either very similar to or restate those that were asserted by plaintiffs and dismissed in Rettig II. Plaintiffs themselves recognized, in arguing their motion to supplement their complaint in Rettig II, that "[t]he transactions involved in the complaint, the counterclaims, and the supplemental complaint all arise out of the same occurrence and transaction." We agree.

Plaintiffs argue that even though Shinew did not sign the October 17, 1988 settlement agreement, an independent action can be brought against him for the sole purpose of forcing Shinew to perform the inventory cost calculations required by that agreement. The cases relied upon by plaintiffs, however, do not support such a theory. Shinew's employer, Northwest Ohio Tool, and not Shinew, is the real party in interest.

For the foregoing reasons, the judgment of the court of appeals is reversed, and the summary judgment entered by the trial court in favor of defendants is reinstated.

Judgment reversed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, F.E. Sweeney and Pfeifer, JJ., concur.

Footnote:
1    This case does not present the issue as to whether a defendant is estopped from asserting Civ. R. 13(A) as a bar to plaintiff's claim where, in the earlier action, the defendant had consented to a dismissal without prejudice and the refiling of the claim; and a determination of such issue should not be implied from this opinion.  See, e.g., Beta II, Inc. v. Fed. Ins. Co. (Aug. 15, 1984), Hamilton App. No. C-830779, unreported.  Nor does this case involve the situation where the complaint in the earlier action was dismissed prior to the filing of a counterclaim, or where a counterclaim was filed as a complaint in another action and the two actions were consolidated.  See, e.g., Jackson v. Simmons (Mar. 4, 1993), Cuyahoga App. No. 61906, unreported.  It should be noted further that the trial court in this case did not order separate trials pursuant to Civ. R. 13 (I).