JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Nationwide Mutual Fire Insurance Company ("Nationwide") appeals the trial court's decision granting summary judgment in favor of State Auto Mutual Insurance Companies ("State Auto"). Nationwide assigns the following errors for our review:
 "I. The trial court erred in concluding that an alleged violation of the notice provisions of appellee's insurance policy, in and of itself, constitutes sufficient grounds for denial of coverage and a defense, without making a finding that the appellee had been prejudiced by the violation."
 "II. The trial court erred in granting summary judgment in favor of appellee because genuine issues of material fact exist as to whether or not appellee was prejudiced by the alleged late notice of Patrick Guhde."
 "III. The trial court erred in failing to consider whether the appellant was entitled to reimbursement from appellee for appellee's failure to provide a defense to Patrick Guhde."
 "IV. The trial court erred in concluding that an issue of material fact existed as to whether there was a `slight deviation' or a `complete departure' from the permission given to Patrick Guhde by the vessel's owner."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On the evening of June 28, 2000, a pleasure boat owned by Vytautas Kavaliunas crashed into the breakwall located at the mouth of the Cuyahoga River, where the river enters Lake Erie. At the time of the accident, Jeffrey Diederich, Patrick Guhde, and Patrick Westropp were all occupants of the boat. At the time of the accident, Kavaliunas, the boat's owner, was not on the vessel. *Page 4 
 {¶ 4} On April 18, 2002, Westropp, who sustained personal injuries as a result of the accident, filed suit and alleged that either Diederich or Guhde was operating the vessel at the time of the accident. Westropp also alleged that Diederich and Guhde operated the vessel with the express and/or implied permission of Kavaliunas, the vessel's owner. In addition, Westropp named Kavaliunas as a defendant, although he was not on the boat at the time of the accident.
 {¶ 5} At the time of the accident, Kavaliunas' boat was insured under a yacht insurance policy issued by State Auto. State Auto provided a defense to Kavaliunas in the suit brought by Westropp. Subsequently, on July 1, 2002, State Auto filed a separate suit against Westropp, Diederich, and Guhde seeking compensation for property damage to Kavaliunas' boat.
 {¶ 6} In the suit, State Auto alleged that Westropp, Diederich, and Guhde, without the knowledge and permission of Kavaliunas, took the vessel into the open waters of Lake Erie and upon their return crashed into the breakwall. In the suit, State Auto also alleged that the three defendants, acting in concert, caused approximately $53,784.84 in damages to Kavaliunas' boat. In addition, State Auto alleged that although all three defendants were on the boat, none would disclose who was actually behind the wheel of the vessel at the time of the accident.
 {¶ 7} Guhde tendered the personal injury complaint and the property damage complaint brought by Westropp and State Auto respectively, to Nationwide, who *Page 5 
retained counsel to defend Guhde pursuant to the liability provision of his homeowner's insurance policy. On September 3, 2002, the trial court consolidated the personal injury lawsuit brought by Westropp and the property damage lawsuit brought by State Auto on behalf of Kavaliunas.
 {¶ 8} On September 27, 2002, Guhde filed answers to the respective complaints and denied the allegations that he was operating the vehicle when it crashed. In addition, Guhde filed cross-claims against Westropp and Diederich alleging that the two men, acting jointly, independently, or in concert, negligently operated the vessel causing it to be damaged.
 {¶ 9} Thereafter, throughout 2002, 2003, and the early part of 2004, extensive motions and discovery practice ensued between the parties. The trial court scheduled trial of the matters to commence on June 28, 2004. *Page 6 
 {¶ 10} On June 7, 2004, in written correspondence to State Auto, suggesting that he had been accused of being a permissive user of Kavaliunas' vessel, Guhde demanded that State Auto provide representation to him in the Westropp litigation. State Auto refused. Guhde then sought and was granted leave to file a third-party complaint against State Auto in the Westropp litigation. In response, State Auto filed a derivative claim against Guhde's insurer, Nationwide. In the derivative claim, State Auto sought a declaration that if Guhde was determined to be an insured, then State Auto's coverage was either in excess or pro-rata to that of Nationwide.
 {¶ 11} On September 21, 2004, pursuant to a settlement agreement, Westropp dismissed Kavaliunas from the personal injury litigation. Pursuant to the settlement agreement, State Auto agreed to dismiss its property damage claim against Westropp. The trial court scheduled a new trial date of February 9, 2005, on Guhde's third-party complaint against State Auto.
 {¶ 12} In the meantime, Nationwide settled Westropp's claim against Guhde by agreeing to pay Westropp $200,000. Thereafter, on February 4, 2005, Guhde voluntarily dismissed his third-party complaint against State Auto, who, in turn dismissed its derivative claim against Nationwide. State Auto also agreed to dismiss its property damages claim against Diederich and Guhde once Nationwide issued payment of settlement to Westropp on his personal injury claim. Nationwide issued payment to Westropp on April 22, 2005, and all the respective parties dismissed their suits.
 {¶ 13} On February 8, 2006, Nationwide filed a complaint for declaratory judgment seeking reimbursement from State Auto for the $200,000 it paid to Westropp on Guhde's behalf, as well as reimbursement for the sums it expended defending Guhde. On August 21, 2006, State Auto filed motion for summary judgment maintaining that Guhde was not an insured under the policy issued to Kavaliunas. In addition, State Auto argued that Guhde failed to assert a compulsory counterclaim. Further, State Auto asserted the policy defenses of late notice and lack of cooperation on Guhde's part in respect to the Westropp litigation. *Page 7 
 {¶ 14} On December 11, 2006, the trial court granted State Auto's motion for summary judgment.
 Summary Judgment {¶ 15} We address Nationwide's first three assigned errors together, because they encompass similar propositions of fact and law. Nationwide argues the trial court erred when it granted summary judgment in favor of State Auto by finding that Guhde violated the notice provision, thus precluding coverage. We disagree.
 {¶ 16} We review an appeal from summary judgment under a de novo standard of review.[1] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[2] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party.[3] *Page 8 
 {¶ 17} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[4] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[5]
 {¶ 18} In granting State Auto's motion for summary judgment, the trial court made the following findings, stated in pertinent part as follows:
 "Defendant, State Auto Insurance Company's Motion for Summary Judgment filed on August 21, 2006, is granted for the following reasons: Plaintiff's insured, Patrick Guhde's duty to give State Auto prompt and timely notice of an occurrence is a condition precedent for coverage. A violation of that duty negates coverage obligations. While State Auto had timely notice of an occurrence, it is clear that Guhde (through Nationwide) waited 4 years from the date of the accident to assert a claim for coverage. As a matter of law, Mr. Guhde's untimely delay permits State Auto to deny Guhde coverage under its insurance policy."[6]
 {¶ 19} In Ferrando v. Auto-Owners Mut. Ins.Co.,[7] the Ohio Supreme Court outlined an analysis for cases involving an alleged breach of a prompt-notice condition. In Ferrando, the Ohio Supreme Court specifically held:
 "When an insurer's denial of [uninsured or] underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved *Page 9 
of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice.[8]
 {¶ 20} Furthermore, "an insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary."[9]
Accordingly, the determination as to whether a breach of the prompt-notice provision relieves the insurer of its obligation to provide UM/UIM coverage involves a two-step process.[10]
 {¶ 21} First, the court must determine whether the insurer did not receive reasonable notice, thereby resulting in a breach of the provision.[11] "A provision in an insurance policy requiring `prompt' notice to the insurer requires notice within a reasonable time in light of all the surrounding facts and circumstances."[12]
 {¶ 22} Second, if the court has determined that a breach of the prompt-notice provision occurred, it must then determine whether the insurer suffered prejudice such that UM/UIM coverage must be forfeited.[13] A presumption arises that the *Page 10 
unreasonable delay was prejudicial to the insurer.[14] Nevertheless, this presumption may be rebutted by the insured with evidence demonstrating the contrary.[15]
 {¶ 23} Within this assigned error, Nationwide argues that the trial court erred by finding that a late request for coverage was the equivalent of a late notice, and thus ran afoul of the Ohio Supreme Court's analysis in Ferrando. We are not persuaded.
 {¶ 24} The State Auto yacht insurance policy issued to Kavaliunas states in pertinent part as follows:
 "SECTION V — DUTIES AFTER A LOSS OCCURS In the event of any loss, damage, or occurrence that is covered by this policy, any person presenting a claim must:
 Notify Us Give us or our authorized agent immediate notice of any occurrence that may result in a claim under this policy. This notice should state:
 (a) With respect to the incident, where, when and how;
 (b) Property concerned;
 (c) If injuries were involved, the names and addresses of injured parties and all witnesses.
 Send us promptly any legal papers or notice you receive in connection with the loss and a confirming written statement shall be submitted to us as soon as possible.
 Preserve our rights
 Do not make any payments, assume any obligation, or incur any expenses without our consent. *Page 11 
 "* * *
 "Cooperate with us
 Cooperate with us in all ways in the investigation, defense, and settlement of any loss; submit to examination under oath if we request."
 {¶ 25} In the instant case, it is undisputed that State Auto received prompt notice of the boating accident. It is also undisputed that Guhde waited approximately four years from the date of the accident to assert a claim for coverage, which is pivotal to our analysis of the trial court's determination that State Auto properly denied Guhde coverage.
 {¶ 26} The record before us indicates that after being served with the personal injury complaint in the Westropp litigation, Guhde tendered the complaint to Nationwide, his homeowner's insurance carrier. Guhde also tendered the property damage complaint brought by State Auto on behalf of Kavaliunas to Nationwide. Here, while Guhde immediately placed Nationwide on notice of his claim to coverage, he took no such action with respect to State Auto until four years after the accident.
 {¶ 27} In addition, as the litigation progressed, in his pleadings and deposition testimony, Guhde consistently maintained that he was not operating the boat when it crashed into the breakwall.[16] Further, the record indicates that Guhde failed to cooperate with State Auto during the investigative phase of the litigation. *Page 12 
 {¶ 28} The following exchange took place during the deposition of State Auto's claims representative, Alan Atwell:
 "Q. Did you conduct interviews of any other people that were involved in the casualty?
 A. Well, I believe we tried to contact all three of the perpetrators or people on the boat.
 Q. And were you able to do — — were you able to talk to any of them?
 A. Personally, I believe I talked to Guhde at one point well after the initial accident date.
 Q. Okay. And did you interview him as to what happened?
 A. No.
 Q. And he refused to participate?
 A. Correct.
 Q. All right. And have you tried to or have you reached anybody else involved in this case?
 A. No, I believe Mr. Pesta may have reached one, two, or three of them, and there was never any cooperation given by any of the three at any time."[17]
 {¶ 29} In the instant matter, Guhde not only failed to assert a claim for coverage in a timely manner, but Guhde also failed to cooperate with State Auto. An insured's duty to give the liability insurer proper and timely notice of an occurrence and to cooperate with his insurer is a condition precedent to coverage.[18] *Page 13 
 {¶ 30} Notice provisions in insurance contracts allow the insurer to step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims.[19] Guhde's decision to wait four years to assert a claim for coverage affected State Auto's ability to control the litigation, including resolving potentially covered damage claims in a timely and cost efficient manner. We are convinced that but for Guhde's unreasonable delay in asserting a claim for coverage, such options would have been available to State Auto. Guhde's actions were clearly prejudicial to State Auto. Therefore, we conclude the trial court properly found that Guhde's four-year delay in asserting a claim for coverage permitted State Auto to deny said coverage.
 {¶ 31} We also conclude that Guhde had a much earlier opportunity to assert a claim for coverage, but failed to do so. At the time State Auto filed its property damage complaint, Guhde was obligated, pursuant to Civ.R. 13, to assert a compulsory counterclaim for coverage. Civ.R. 13(A) governs compulsory counterclaims. That rule provides, in pertinent part:
 "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its *Page 14 
adjudication the presence of third parties of whom the court cannot acquire jurisdiction."
 {¶ 32} The purpose of Civ.R. 13, much like the doctrine of res judicata, is to avoid multiplicity of suits by requiring in one action the litigation of all existing claims arising from a single transaction or occurrence, no matter which party initiates the action.[20] Thus, if a party fails to assert a compulsory counterclaim, he is barred from litigating the counterclaim in a separate action.[21] Here, Guhde's late assertion of a claim for coverage arose out of a single transaction, namely, the boating accident. Thus, by failing to file a compulsory counterclaim, Guhde is barred from now litigating this claim.
 {¶ 33} We conclude on the record before us that the trial court correctly determined that Guhde's late assertion of a claim for coverage permitted State Auto to deny said coverage. Accordingly, we overrule Nationwide's first three assigned errors.
 {¶ 34} In the fourth assigned error, Nationwide argues the trial court erred in denying its motion for summary judgment, concluding that an issue of material fact existed as to whether there was a "slight deviation" or a "complete departure" from the permission given to Guhde to move the vessel. We disagree. *Page 15 
 {¶ 35} We address this assigned error amidst the backdrop of conflicting versions posited by the three occupants of the boat on the day of the accident. The undisputed salient evidence indicates that on June 28, 2000, Kavaliunas gathered with his friends, Diederich, Guhde, and Westropp at Shooters Restaurant, on the Cuyahoga River. Kavaliunas docked his boat in front of the restaurant. At some point in the evening Kavaliunas left his vessel and went to a location away from the restaurant to assist with another boater's vessel.
 {¶ 36} During Kavaliunas's absence, a large freighter entered the Cuyahoga River, and it became necessary to move the boat. Diederich moved Kavaliunas' boat away from the dock, allowed the freighter to pass, and then returned to the Shooters Restaurant dock.
 {¶ 37} Later, a second freighter entered the Cuyahoga River and it became necessary to move the boat a second time. It was at this juncture that Kavaliunas's boat ended up on the open waters of Lake Erie, ultimately crashing into the breakwall.
 {¶ 38} Nationwide now argues that there is no genuine issue of fact that Guhde had "broad" permission to move Kavaliunas's boat, and its motion for summary judgment should have been granted. We find Nationwide's position tenuous, especially since Guhde has consistently maintained in his pleadings as well as in his deposition testimony, that he was not operating the boat at the time of the crash. *Page 16 
 {¶ 39} A person seeking to recover under a policy of insurance generally has the burden to demonstrate coverage under the policy.[22]
Further, under the provisions of an automobile liability insurance policy in which the coverage is extended to include a third person if the actual use of the automobile is with the permission of the named insured, such permission relates to the use to which the automobile is being put by such third person at the time of the accident.[23]
 {¶ 40} Here, Guhde, having consistently maintained that he was not operating the boat at the time of the accident, makes the issue of permission immaterial to our analysis of the trial court's decision. Nationwide is estopped from taking a position contrary to that of Guhde in the underlying litigation.[24]
 {¶ 41} Having carefully reviewed the record before us, we conclude that the trial court correctly determined that there existed a genuine issue of material fact as to whether there was a slight deviation or a complete departure from the expressed or implied permission to move the boat. Therefore, Nationwide's motion for summary judgment was correctly denied. Accordingly, we overrule the fourth assigned error. *Page 17 
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, JUDGE
COLLEEN CONWAY COONEY, P.J., and KENNETH A. ROCCO, J., CONCUR
[1] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[2] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[3] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[5] Id. at 293.
[6] Journal Entry December 5, 2006.
[7] 98 Ohio St.3d 186, 2002-Ohio-7217.
[8] Id. at paragraph one of the syllabus.
[9] Id. See, also, Ruby v. Midwestern Indem. Co. (1988),40 Ohio St.3d 159, 161.
[10] Ferrando, 98 Ohio St.3d 186, 2002-Ohio-7217 at 189.
[11] Id. at 190.
[12] Ruby, 40 Ohio St.3d 159, at syllabus.
[13] Ferrando, 98 Ohio St.3d 186, 2002-Ohio-7217 at 189.
[14] Id. at 190; Ruby at 161.
[15] Ferrando at 190; Ruby at 161.
[16] Guhde Depo. pgs. 27-29, 54, 60-61.
[17] Atwell Depo. pg. 7.
[18] Beaver Excavating Co. v. United States Fid. Guar. Co. (1998),126 Ohio App.3d 9; Gabor v. State Farm Mut. Auto. Ins. Co. (1990),66 Ohio App.3d 141.
[19] See Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau
(2000), 88 Ohio St.3d 292; American Ins. Co. v. Fairchild Industries,Inc. (E.D.N.Y.1994), 852 F. Supp. 1173, 1179.
[20] Carter v. Russo Realtors (Mar. 7, 2000), 10th Dist. No. 99AP-585, citing Rettig Enterprises v. Kohler, 68 Ohio St.3d 274,1994-Ohio-127.
[21] Rettig, 68 Ohio St.3d at 277.
[22] See Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849; Inland Rivers Service Corp. v. Hartford Fire Ins.Co. (1981), 66 Ohio St.2d 32; Standish v. The Ohio Casualty Ins.Co., 1st Dist. No. C-030041, 2003-Ohio-4309; The Home Ins. Co. ofIllinois v. OM Group, Inc., 1st Dist. No. C-020643, 2003-Ohio-3666;Cincinnati Ins. Co. v. Kramer (1993), 91 Ohio App.3d 528.
[23] Gulla v. Reynolds (1949), 151 Ohio St. 147, paragraph one of the syllabus.
[24] See Wloszek v. Weston, Hurd, Fallon, Paisley Howley, LLP, Cuyahoga App. No. 82412, 2004-Ohio-146. *Page 1